UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| TYLER EUGENE ADAMS, JR. | CIVIL ACTION NO. 11-01504 |
| VERSUS | JUDGE S. MAURICE HICKS |
| CHESAPEAKE OPERATING, INC. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Chesapeake Operating, Inc.'s ("Chesapeake") Motion for Partial Summary Judgment. (Record Document 12). Chesapeake moves the Court to dismiss the portions of Plaintiff Tyler Eugene Adams, Jr.'s ("Adams") claim seeking double the amount of payments and legal interest due to Adams as a result of mineral interests he possesses. Chesapeake further moves the Court to dismiss Adams' claim for attorney's fees. Upon a review of the record, including Adams' opposition to Chesapeake's motion (Record Document 16), Chesapeake's Motion for Partial Summary Judgment is **GRANTED**.

**BACKGROUND**

Adams owns an undivided one-third interest in certain property located in DeSoto Parish, Louisiana. (Record Document 2 at 1). Adams' property is "located in a drilling and production unit authorized by the Commissioner of Conservation." See id. The unit is being produced by an "Oil & Gas Well...which was completed on October 25, 2010, by Chesapeake Operating, Inc., who is operating the well and

production unit." See id. Adams concedes that his property is not subject to any mineral lease. See id.

On February 10, 2011, Adams sent Chesapeake a letter pursuant to La. R.S. 30:103.1,[1] requesting reports, information and statements required under the statute. See id. The letter stated that Chesapeake had failed to comply with La. R.S.

---

[1] La. R.S. 30:103.1 reads:
"103.1. Operators and producers to report to owners of unleased oil and gas interests:
A. Whenever there is included within a drilling unit, as authorized by the commissioner of conservation, lands producing oil or gas, or both, upon which the operator or producer has no valid oil, gas, or mineral lease, said operator or producer shall issue the following reports to the owners of said interests by a sworn, detailed, itemized statement:
(1) Within ninety calendar days from completion of the well, an initial report which shall contain the costs of drilling, completing, and equipping the unit well.
(2) After establishment of production from the unit well, quarterly reports which shall contain the following:
(a) The total amount of oil, gas, or other hydrocarbons produced from the lands during the previous quarter.
(b) The price received from any purchaser of unit production.
(c) Quarterly operating costs and expenses.
(d) Any additional funds expended to enhance or restore the production of the unit well.
B. No operator or producer shall be required under the provisions of this Section to report any information which is not known by such operator or producer at the time of a report. However, the operator or producer shall report the required information to the owner of the unleased interest within thirty days after such information is obtained by the operator or producer, or in the next quarterly report, whichever due date is later.
C. Reports shall be sent by certified mail to each owner of an unleased oil or gas interest who has requested such reports in writing, by certified mail addressed to the operator or producer. The written request shall contain the unleased interest owner's name and address. Initial reports shall be sent no later than ninety calendar days after the completion of the well. The operator or producer shall begin sending quarterly reports within ninety calendar days after receiving the written request, whichever is later, and shall continue sending quarterly reports until cessation of production.
D. Notwithstanding any other provision of this Section to the contrary, at the time a report is due pursuant to this Section, if the share of the total costs of drilling, completing, and equipping the unit well and all other unit costs allocable to an owner of an unleased interest is less than one thousand dollars, no report shall be required. However, during January of the next calendar year, the operator or producer shall report such costs to the owner."

30:103.1. See id. Adams alleges that Chesapeake did not respond within the thirty day's as required by La. R.S. 30:103.2.[2] (Record Document 2 at 2). As such, Adams alleges that Chesapeake forfeited any right it had to demand contribution for his "*pro rata* share of the cost of drilling and competition of the well." See id. On April 14, 2011, Adams' sent another letter to Chesapeake detailing the effect of Chesapeake's failure to respond. See id. This letter also contained a "demand for production payments" to begin within thirty days of the receipt of the letter. See id.

As a result of these occurrences, Adams filed a law suit in state court, which Chesapeake timely removed to federal court. (Record Document 1). Adams alleges that he is owed "production payments" as well as "a penalty up to twice that amount and interest from date due, as well as reasonable attorney's fees." (Record Document 2 at 2). Chesapeake has filed this motion requesting the Court grant summary judgment on the issue of the penalty and attorney's fees only. (Record Document 12).

---

[2]La. R.S. 30:103.2 reads:
"103.2. Failure to report; penalty
Whenever the operator or producer permits ninety calendar days to elapse from completion of the well and thirty additional calendar days to elapse from date of receipt of written notice by certified mail from the owner or owners of unleased oil and gas interests calling attention to failure to comply with the provisions of R.S. 30:103.1, such operator or producer shall forfeit his right to demand contribution from the owner or owners of the unleased oil and gas interests for the costs of the drilling operations of the well."

## LAW AND ANALYSIS

In the motion currently before this Court, Chesapeake challenges the portion of Adams' complaint that claims Chesapeake is liable to him for "double the amount of payments due, legal interest on that sum from date due, and reasonable attorney's fees." (Record Document 12 at 2).

Adams' request for this penalty and attorney's fees comes from La. R.S. 31:212.21-23, which read as follows:

> Chapter 13. Miscellaneous Provisions
>
> Part 2-A. Production Payments and Royalty Payments to Other Than Mineral Lessor; Remedies of Obligee
>
> § 212.21. Nonpayment of production payment or royalties; notice prerequisite to judicial demand
>
> If the owner of a mineral production payment or a royalty owner other than a mineral lessor seeks relief for the failure of a mineral lessee to make timely or proper payment of royalties or the production payment, he must give his obligor written notice of such failure as a prerequisite to a judicial demand for damages.
>
> § 212.22. Required response of obligor to notice
>
> The obligor shall have thirty days after receipt of the required notice within which to pay the royalties or production payments due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the sums due or stating or failing to state a reasonable cause for nonpayment within this period has the following effect.
>
> § 212.23. Effects of payment or nonpayment with or without stating reasonable cause therefor; division order

> A. If the obligor pays the royalties or production payments due plus the legal interest applicable from the date payment was due, the owner shall have no further claim with respect to those payments.
>
> B. If the obligor fails to pay within the thirty days from notice but states a reasonable cause for nonpayment, then damages shall be limited to legal interest on the amounts due from the date due.
>
> C. If the obligor fails to pay and fails to state a reasonable cause for failure to pay in response to the notice, the court may award as damages double the amount due, legal interest on that sum from the date due, and a reasonable attorney's fee regardless of the cause for the original failure to pay.

Chesapeake argues that since Adams is an "unleased landowner," he does not come within the purview of the above listed statutes as he is not a royalty owner or entitled to a "production payment." (Record Document 12). Adams, however, argues that payments due to an "unleased mineral owner" are "another type of production payment." (Record Document 16 at 4).

The rules for contract interpretation in Louisiana are found in the Louisiana Civil Code. Willis-Knighton Medical Center v. Caddo, 903 So.2d 1071 (La. 2005). "Chief among those rules is the admonition in LSA-C.C. art. 9 that '[w]hen a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.' Additionally, LSA-C.C. art. 11 instructs that

'[t]he words of a law must be given their generally prevailing meaning.'" See id. at 1085.

It is undisputed that there is no lease connecting the two parties in this matter. (Record Document 2 at 1). From a plain reading of the applicable statues, it is clear that Part 2-A of Chapter 13 of Title 31 applies to parties connected, in some form, whether directly or indirectly, by a mineral lease or some type of contract or agreement. La R.S. 31:212.21 refers to the "failure of a *mineral lessee*" and the title of the act that enacted Part 2-A of Chapter 13 of Title 31 reads,

> An Act to enact Part 2-A of Chapter 13 of Title 31 of the Louisiana Revised Statutes of 1950, to be comprised of R.S. 31:212.21 through R.S. 31:212.23, to provide for the remedies and procedure for obtaining payment by a royalty owner other than a mineral lessor and *by the purchaser of a mineral production payment*; to provide for damages, interest, and attorney fees, and the circumstances under which they may be obtained; and to provide for related matters. Acts 1982, No. 249.

(Record Document 17-2 at 3) (emphasis added). The Court makes no determination as to the definition of production payments as one is not needed in this set of circumstances.[3] What is clear from a reading of all of the applicable legislation is that, at a minimum, La. R.S. 31:212.21-.23 requires either a mineral lease or the purchase of a mineral production payment. There is no lease connecting Chesapeake and Adams and Adams did not purchase a mineral production

---

[3]The Court notes that the Louisiana Mineral Code does not provide a definition of "production payments" and Adams fails to cite to any legal authority supporting the definition he asserts.

payment. Therefore, on the narrow issue of this summary judgment, the Court finds that La. R.S. 31:212.21-.23 is not applicable in this matter. Therefore, Chesapeake is entitled to summary judgment on the issue of the penalties set out in those sections of law.

## CONCLUSION

Adams is a Desoto Parish landowner without a mineral lease to anyone burdening his property. Additionally, Adams did not purchase a mineral production payment. Adams is merely a part of a drilling and production unit as authorized by the Louisiana Commission of Conservation. Thus, Adams is not entitled to the double damages, legal interest or attorney's fees provided for under La R.S. 31: 212.21-.23.

Accordingly,

**IT IS ORDERED** that Chesapeake's Motion for Partial Summary Judgment be and hereby is **GRANTED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 20th day of December, 2011.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE